Kane Moon (SBN 249834)
H. Scott Leviant (SBN 200834)
Mariam Ghazaryan (SBN 341119)
**MOON & YANG, APC**
1055 W. Seventh St., Suite 1880
Los Angeles, California 90017
Telephone: (213) 232-3128
Facsimile: (213) 232-3125

Attorneys for Plaintiff, RUTH RAMIREZ

Johnathan Melmed (SBN 290218)
**MELMED LAW GROUP P.C.**
1801 Century Park East, Suite 850
Los Angeles, California 90067
Telephone: (310) 824-3828
Facsimile: (310) 862-6851

Attorneys for Plaintiff, JORGE RUIZ QUEZADA

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| RUTH RAMIREZ, et al., | Case No.: 2:20-CV-11319-JVS-PVC consolidated with 2:21-CV-03458-JVS-PLA |
| *Plaintiff*, | |
| vs. | Assigned to Hon. James V. Selna |
| C&W FACILITY SERVICES, INC., et al., | CLASS ACTION |
| *Defendants*. | **PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR FINAL APPROVAL OF CLASS ACTION AND PAGA ACTION SETTLEMENT AND CERTIFICATION OF SETTLEMENT CLASS; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF** |
| | Date:       June 5, 2023<br>Time:       1:30 p.m.<br>Courtroom:  10C |
| | Action Filed:      November 3, 2020<br>Action Removed:  December 14, 2020<br>Trial Date:        Not Set |

1   TO THE COURT, TO ALL PARTIES AND TO THEIR COUNSEL OF RECORD:

2       PLEASE TAKE NOTICE that on June 5, 2023, in Courtroom 10C of the above-

3   entitled Court, located at 411 West 4th Street, Santa Ana, CA 92701-4516, Plaintiffs

4   RUTH RAMIREZ and JORGE RUIZ QUEZADA ("Plaintiffs") will and hereby do move

5   the Court for an order granting final approval of the JOINT STIPULATION OF CLASS

6   AND REPRESENTATIVE ACTION SETTLEMENT ("Agreement" or "Settlement"

7   herein) reached with defendant C&W FACILITY SERVICES, INC. ("Defendant"), a true

8   and correct copy of which is attached as Exhibit 1 to the Declaration of H. Scott Leviant

9   filed as Docket Number ("Dkt. No.") 40-1. Specifically, Plaintiffs move for an order to:

10      1.  grant approval of the terms of the Agreement as fair, reasonable and

11  adequate under Rule 23(e) of the Federal Rules of Civil Procedure, including the

12  amount of the settlement; the amount of distributions to class members; and the

13  amounts allocated to the enhancement payments and attorney's fees and costs;

14      2.  certify for settlement purposes the Settlement Class described in the

15  Agreement as follows: All non-exempt employees of Defendant who worked for

16  Defendant in California during the Class Period, (the "Class Period" is November 3,

17  2016 through October 3, 2022).  (Settlement, ¶¶ 3-4.)  Excluded from the Settlement

18  Class are: non-exempt employees who worked at Amazon.com, Inc. ("Amazon")

19  locations and non-exempt employees who were unionized.  (Settlement, ¶ 4.)

20      3.  appoint Plaintiffs as representatives for the Settlement Class;

21      4.  appoint counsel for Plaintiffs, Moon & Yang, APC, and Melmed Law

22  Group P.C., as Class Counsel;

23      5.  approve the use of Phoenix Settlement Administrators as the settlement

24  administrator;

25      6.  authorize distributions from the common fund; and,

26      7.  enter judgment on the terms specified in the Agreement and approved by

27  the Court.

28

Plaintiffs' motion is based on this Notice, the following Memorandum of Points and Authorities, the previously-filed Declarations of counsel (Dkt. Nos. 40-1 and 40-2), the previously-filed Declarations of Plaintiffs (Dkt. Nos. 36-4 and 36-5), all other pleadings and papers on file in this action, and any oral argument or other matter that may be considered by the Court.

As this Motion, and the relief sough, is consistent with the provisions of the JOINT STIPULATION OF CLASS AND REPRESENTATIVE ACTION SETTLEMENT, it is not opposed.

Respectfully submitted,

Dated:  May 5, 2023

**MOON & YANG, APC**

By: _____
Kane Moon
H. Scott Leviant
Mariam Ghazaryan

Attorneys for Plaintiff RUTH RAMIREZ

**MELMED LAW GROUP P.C.**
Johnathan Melmed

Attorneys for Plaintiff JORGE RUIZ QUEZADA

**PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR FINAL APPROVAL OF CLASS ACTION AND PAGA ACTION SETTLEMENT AND CERTIFICATION OF SETTLEMENT CLASS**

1
2

# TABLE OF CONTENTS

TABLE OF CONTENTS ......................................................................................... i

TABLE OF AUTHORITIES .................................................................................. iii

I.    INTRODUCTION ........................................................................................ 1

II.   THE NOTICE PROCESS WAS SUCCESSFULLY COMPLETED AFTER
      PRELIMINARY APPROVAL ...................................................................... 2

III.  SUMMARY OF SETTLEMENT TERMS ................................................... 2

IV.   BACKGROUND ........................................................................................... 6

      A.    Plaintiffs' Claims ............................................................................. 6

      B.    Pre-Mediation Data Production and Analysis .................................. 7

      C.    Settlement ......................................................................................... 8

V.    CLASS DEFINITION .................................................................................. 8

VI.   DISCUSSION ............................................................................................... 9

VII.  THE SETTLEMENT MERITS FINAL APPROVAL ................................. 9

      A.    Plaintiffs' Claims Merit Class Action Treatment for Settlement
            Purposes ......................................................................................... 10

            1.    Numerosity ........................................................................... 11

            2.    Commonality and Predominance of Common Issues ...........11

            3.    Typicality .............................................................................. 12

            4.    Adequate Representation ...................................................... 13

            5.    Superiority ............................................................................ 14

      B.    The Settlement Falls Squarely Within the Range of Reasonableness
            and Should Be Finally Approved ..................................................... 15

            1.    The Value of the Settlement to Class Members Is Fair, Reasonable
                  and Adequate ........................................................................ 17

            2.    The Agreed Upon Fees and Costs Are Reasonable ...............22

Case No.:  2:20-CV-11319-JVS-PVC           Page i          *Ramirez v. C&W Facility Services, Inc.*

PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR FINAL APPROVAL OF CLASS ACTION AND PAGA ACTION
SETTLEMENT AND CERTIFICATION OF SETTLEMENT CLASS

a)     Plaintiffs seek reasonable fees. ...................................................22

b)     Plaintiffs seek only actual costs. ...............................................23

3.     The Service Payments Are Reasonable .............................................23

4.     The Costs of Administration Are Reasonable ..................................24

VIII. CONCLUSION ......................................................................................... 24

Case No.:  2:20-CV-11319-JVS-PVC                Page ii                *Ramirez v. C&W Facility Services, Inc.*

**PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR FINAL APPROVAL OF CLASS ACTION AND PAGA ACTION
SETTLEMENT AND CERTIFICATION OF SETTLEMENT CLASS**

1

TABLE OF AUTHORITIES

2

3    **FEDERAL DECISIONAL AUTHORITY**

4    *Acosta v. Trans Union LLC*, 243 F.R.D. 377 (C.D. Cal. 2007) .........................................9

5    *Armstrong v. Board of School Directors of the City of Milwaukee*,

6        616 F.2d 305 (6th Cir. 1980) ...........................................................................10

7    *Baldwin & Flynn v. Nat'l. Safety Associates*, 149 F.R.D. 598 (N.D. Cal. 1993) ............10

8    *Blackie v. Barrack*, 524 F.2d 891 (9th Cir. 1975)................................................. 10, 11, 12

9    *Cal. Rural Legal Assistance, Inc. v. Legal Servs. Corp.*,

10        917 F.2d 1171 (9th cir. 1990) .........................................................................13

11    *Culinary/Bartender Trust Fund v. Las Vegas Sands, Inc.*,

12        244 F.3d 1152 (9th Cir. 2001) ................................................................... 12, 14

13    *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156 (1974) .............................................10

14    *Elkins v. Equitable Life Ins. Of Iowa*, 1998 WL 133747 (M.D. Fla. 1998).....................14

15    *Hammon v. Barry*, 752 F.Supp 1087 (DDC 1990)..............................................16

16    *Hanlon v. Chrysler Corp.*, 150 F.3d 1011 (9th Cir. 1998) ............................. 10, 11, 12, 13

17    *Hanon v. Dataproducts Corp.*, 976 F.2d 497 (9th Cir. 1992)..................................13

18    *In re Armored Car Anti-Trust Litigation*, 472 F.Supp 1357 (ND GA 1979) .................16

19    *In re Computer Memories Sec. Litig.*, 111 F.R.D. 675 (N.D. Cal. 1986) .......................11

20    *In re Immune Response Securities Litigation*,

21        497 F.Supp.2d 1166 (S.D. Cal. 2007) ....................................................... 16, 17

22    *In re Southern Ohio Correctional Facility*, 175 F.R.D. 270 (S.D. Ohio 1997)..............23

23    *Ingram v. The Coca-Cola Co.*, 200 F.R.D. 685 (N.D. Ga. 2001) ...................................23

24    *Lewis v. Gross*, 663 F.Supp. 1164 (E.D.N.Y. 1986) .......................................................11

25    *Linney v. Cellular Alaska Partnership*, 1997 WL 450064 (N.D. Cal. 1997) .......... 16, 17

26    *Mars Steel Corp. v. Continental Illinois National Bank and Trust Co.*,

27        834 F.2d 677 (7th Cir. 1987)...........................................................................16

28

*Officers for Justice v. Civil Service Commission of City and County of San Francisco*,

    688 F.2d 615 (9th Cir. 1982) ........................................................................15

*Paul, Johnson, Alston & Hunt v. Graulty*, 886 F.2d 268 (9th Cir. 1989) .......................22

*Pridd v. Edelman*, 883 F.2d 438 (6th Circuit 1989) .......................................................16

*Riordan v. Smith Barney*, 113 F.R.D. 60 (N.D. Ill. 1986)................................................11

*Six Mexican Workers v. Arizona Citrus Growers*, 904 F.2d 1301 (9th Cir. 1990) .........22

*Sommers v. Abraham Lincoln Federal Savings & Loan Association*,

    79 F.R.D. 571 (ED PA 1978) .....................................................................16

*Staton v. Boeing Co.*, 327 F.3d 938 (9th Cir. 2003) ............................................ 10, 15, 16

*Strube v. American Equity Inv. Life Ins. Co.*, 226 F.R.D. 688 (M.D. Fla. 2005) ............14

*Valentino v. Carter-Wallace*, 97 F.3d 1227 (9th Cir. 1996)..............................................14

*Van Bronkhorst v. Safeco Corp.*, 529 F.2d 943 (9th Cir. 1976)..........................................9

*Van Vranken v. Atl. Richfield Co.*, 901 F. Supp. 294 (N.D. Cal. 1995)...........................23

*Vizcaino v. Microsoft Corp.*, 290 F.3d 1043 (9th Cir. 2002) ..........................................22

*Wang v. Chinese Daily News*, 231 F.R.D. 602 (C.D. Cal. 2005).............................. 11, 12

*Zinser v. Accufix Research Institute, Inc.*, 253 F.3d 1188 (9th Cir. 2001).......................12

**CALIFORNIA DECISIONAL AUTHORITY**

*Duran v. US Bank Nat'l Ass'n*, 59 Cal. 4th 1 (2014)........................................................17

**STATUTES**

Labor Code § 2699 ...........................................................................................................18

**RULES**

Fed. R. Civ. P. 23 ...................................................................................................... passim

1

**TREATISES**

2

*Manual for Complex Litigation Second* § 30.44 (1985)......................................................9

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## MEMORANDUM OF POINTS AND AUTHORITIES

## I.    INTRODUCTION

This is a putative wage and hour class action on behalf of non-exempt employees employed by Defendant at any time from November 3, 2016 through October 3, 2022 (excluding non-exempt employees who worked at Amazon.com, Inc. ("Amazon") locations and non-exempt employees who were unionized).  The core issues in the case were based on allegations by named Plaintiffs RUTH RAMIREZ and JORGE RUIZ QUEZADA ("Plaintiffs") that Defendant did not provide legally compliant meal periods and rest breaks, did not reimburse employees for business expenses, did not compensate employees for all time worked, and, as a result, wage statements provided to employees were rendered inaccurate, final wages were not timely paid, and the conduct violated the California Private Attorneys General Act of 2004 ("PAGA") and the Unfair Competition Law ("UCL").  Defendant disputes these claims.

The case was thoroughly investigated by all Parties.  Following the production of policy documents, time records, and pay data, and vigorous negotiation at mediation, Plaintiffs and Defendant (Plaintiffs and Defendant collectively referred to herein as the "Parties") reached a proposed class action settlement valued at $2,500,000.00 for the 1,574 members of the putative class.[1]  The Court granted preliminary approval (Dkt. No. 39), and the Notice process was then completed successfully.

The Parties believe the Settlement to be fair and reasonable, to adequately reflect the potential liability and substantial risks in this matter, and to be the result of thorough factual and legal analyses and arms-length negotiations.  Through this Motion, Plaintiffs request certification of a Settlement Class pursuant to Fed. R. Civ. P. 23 and final approval of the proposed class action settlement.

---

[1] **NOTE**:  The number of class members is much ***lower*** than originally estimated, once excluded employees were removed.  This means that the average recovery for each class member will be approximately twice what was originally anticipated.  This only serves to improve the reasonableness of the Settlement.

## II.    THE NOTICE PROCESS WAS SUCCESSFULLY COMPLETED AFTER PRELIMINARY APPROVAL

The Parties have fulfilled the class notice procedures set forth in the Court's Preliminary Approval Order and the Class Members' responses have been overwhelmingly positive.  The claims administrator, Phoenix Settlement Administrators ("Settlement Administrator" or "Phoenix"), sent individual notices to 1,574 Class Members on March 2, 2023.  (Declaration of Taylor Mitzner ("Mitzer Decl."), ¶ 5.)  The list of Class Members utilized by Phoenix was prepared by (1) obtaining a list of Class Members from Defendant, and (2) updating all addresses through the National Change of Address System.  (Mitzner Decl., ¶¶ 3-4)  Address traces were performed and updated addresses were obtained for 93 of the 109 returned packets.  (Mitzner Decl., ¶ 6.)  16 Notices were undeliverable because current addresses could not be located even after using consumer databases to search for current addresses.  (Mitzner Decl., ¶ 7.)  The best Notice practicable was provided.

*No* Class Members have objected to the settlement.  (Mitzer Decl., ¶ 9.)  *No* Class Members submitted valid requests for exclusion.  (Mitzner Decl., ¶ 8.)  Phoenix's costs for administration will be $16,000.00.  (Mitzner Decl., ¶ 16.)

## III.    SUMMARY OF SETTLEMENT TERMS

The full terms of the settlement are set forth in the Settlement.  The primary material terms are as follows:

      (a)    The Settlement Class is:  All non-exempt employees of Defendant who worked for Defendant in California during the Class Period, (the "Class Period" is November 3, 2016 through October 3, 2022). (Settlement, ¶¶ 3-4.)  Excluded from the Settlement Class are: non-exempt employees who worked at Amazon.com, Inc. ("Amazon") locations and non-exempt employees who were unionized. (Settlement, ¶ 4.)

(b)    Defendant agrees not to oppose certification of a Class for purposes of Settlement only (Settlement, ¶ 19);

(c)    <u>Settlement Amount</u>:  Defendant will pay a maximum of **$2,500,000.00**, referred to as the Gross Settlement Amount (or GSA herein), resulting in an average **gross** payment per Class Member of **$1,588.31** (Settlement, ¶ 26(c));

(d)    <u>**Class Size**</u>:  A total of <u>**1,574**</u> individuals are Class Members. (Leviant Decl., ¶ 35.)  There are **128,529** work weeks worked by the Class Members.

(e)    <u>**PAGA Group Size**</u>:  A total of <u>**870**</u> Class Members worked during the PAGA Period.  There are 99,952 pay periods worked by PAGA Employees during the PAGA Period.

(f)    <u>No Reversion</u>: The Settlement is a ***non-reversionary*** settlement (Settlement, ¶ 26(e));

(g)    <u>Certification</u>:  Plaintiffs address certification requisites herein, at Part IV.A., and in the accompanying Declaration of H. Scott Leviant.

(h)    <u>No Claim Form</u>:  No claim form is required;

(i)    <u>Class Release</u>:  The Settlement will release specified wage-and-hour claims for Settlement Class Members (those Class Members who do not timely opt out of the Settlement) (Settlement, ¶¶ 4, 37);

(j)    <u>PAGA Release</u>:  The Class Members will release the PAGA Claims set forth in this Action, that were identified in the Complaint and Plaintiffs' LWDA Notice Letters, regardless of whether they opt out of the class portion of the Settlement (Settlement, ¶¶ 15, 37);

(k)    <u>Net Settlement Amount Available to the Class</u>: After deducting Class Counsel's attorneys' fees and costs, service payments to Plaintiffs, estimated Administration costs, and the PAGA allocation, the remainder will be available for distribution to Class Members who do

not opt out, with each Class Member receiving a share based on the number of workweeks each Class Member worked for Defendant in a relevant position within the Class Period.  Assuming all awards are issued as requested, the Net Settlement Amount is at least $1,419,342.49 resulting in an average **net** payment per Class Member of at least **$901.74**, before any tax withholdings (excluding the aggrieved employees' share of PAGA penalties).[2] (Settlement, ¶ 26(g).)

(l)    Tax Allocation: One-third (1/3) of all Settlement Class Payments to Settlement Class Members shall be considered wages and shall be subject to the withholding of all applicable local, state and federal taxes, and two-thirds (2/3) of all Settlement Class Payments to Settlement Class Members shall be considered non-wages for the settlement of interest claims, liquidated damages, and statutory and civil penalty claims. (Settlement, ¶ 26(j).)  The PAGA Settlement Payment shares to PAGA Employees will be entirely allocated to penalties.  (Settlement, ¶ 26(j).)

(m)    Employer's Portion of Payroll Taxes Paid Separately: Defendant's portion of payroll taxes (e.g., FICA, FUTA, etc.) owed on any settlement payments to Class Members that constitute wages will be paid separate and apart from the GSA (Settlement, ¶ 26(h));

(n)    Settlement Administrator:  The notice portion of the Settlement will be administered by a third-party Administrator, Phoenix Settlement Administrators, and actual costs of administration are estimated to be $16,000 (Settlement, ¶ 26(p));

---

[2] This exceeds the Settlement Administrator's estimate because the Settlement Administrator assumes that the entire amount allocated for costs will be awarded.  Actual costs are less than $30,000, thereby increasing the Net Settlement Amount.

(o)  <u>Class Data for Administration</u>:  The Administrator will receive the Class List within 14 calendar days of Preliminary Approval Date, use the NCOA database to update the Class List, and then use skip tracing on returned Notices (Settlement, ¶ 32(a));

(p)  <u>Notice</u>:  The Notice will be distributed within 28 calendar days of the Preliminary Approval Date (Settlement, ¶ 32(b)).  The Notice describes how to dispute workweeks, submit an objection in writing, in person or through an attorney, or request exclusion (Settlement, ¶ 26(s) and Exhibit A thereto).

(q)  <u>Objections</u>:  Written objections must be submitted by the response deadline; oral objections may be presented at the time of hearing (Settlement, ¶ 26(x));

(r)  <u>Exclusion Requests</u>:  The procedure for exclusion requests, mailing a request to the Administrator, is the same as the procedure for submitting a written objection (Settlement, ¶¶ 26(w) and 26(x));

(s)  <u>PAGA Allocation</u>: From the GSA, **$200,000** will be allocated to settle claims brought pursuant to the California Private Attorneys General Act, Labor Code § 2699 *et seq*. ("PAGA"). Seventy-five percent (75%) of this amount, or **$150,000**, will be paid to the California Labor & Workforce Development Agency. (Settlement, ¶ 10.)

(t)  <u>Notice to LWDA</u>:  Notice was provided prior to the filing of this Motion.  Evidence is attached to the Leviant Declaration.

(u)  <u>Enhancement/Service Awards to Plaintiff</u>: Defendant will not oppose the application for Class Representative Service Payments of up to **$7,500** for each Plaintiff, to be paid from the GSA (Settlement, ¶ 26(g));

(v)  <u>Fees and Costs</u>:  Defendant will not oppose Class Counsel's application for fees not to exceed 33 1/3% of the GSA (**$833,333.33**),

and actual costs, in an amount not to exceed $30,000, to be paid out of the GSA. (Settlement, ¶ 26(m).)  The actual costs requested are **$9,523.56**, for Moon & Yang, and **$6,800.62**, for Melmed Law Group, for a combined total of **$16,324.18**, which is below the cap.

(w)    Uncashed Checks:  Any settlement checks that are mailed to the Class Members and remain uncashed after 180 days of the date of issuance will be cancelled, and shall be transmitted to the California State Controller's Office for Unclaimed Property in the name of each Class Member who failed to cash their Settlement Payment check prior to the void date (Settlement, ¶ 35);

(x)    Check Void Period:  Settlement checks will be valid for 180 days (Settlement, ¶ 34);

(y)    Confidentiality Provisions:  The Settlement permits Class Counsel to discuss the Settlement with Class Members (Settlement ¶ 58).

(Leviant Decl., ¶ 11.)  A true and correct copy of the JOINT STIPULATION OF CLASS AND REPRESENTATIVE ACTION SETTLEMENT is attached thereto as Exhibit "1."

## IV.    BACKGROUND

### A.    Plaintiffs' Claims

On November 3, 2020, Plaintiff RUTH RAMIREZ filed a putative Class Action alleging the following labelled causes of action: (1) Failure to Pay Minimum Wage and Straight Time Wages [Cal. Lab. Code §§ 204, 1194, 1194.2, and 1197]; (2) Failure to Pay Overtime Compensation [Cal. Lab. Code §§ 1194 and 1198]; (3) Failure to Provide Meal Periods [Cal. Lab. Code §§ 226.7, 512]; (4) Failure to Authorize and Permit Rest Breaks [Cal. Lab. Code §§ 226.7]; (5) Failure to Indemnify Necessary Business Expenses [Cal. Lab. Code § 2802]; (6) Failure to Timely Pay Final Wages at Termination [Cal. Lab. Code §§ 201-203]; (7) Failure to Provide Accurate Itemized Wage Statements [Cal. Lab. Code § 226]; and (8) Unfair Business Practices [Cal. Bus. & Prof. Code §§ 17200, *et seq.*].  The *Ramirez* matter was subsequently removed to federal court.  On November 20, 2020,

Plaintiff JORGE RUIZ QUEZADA filed a putative Class Action alleging claims for relief substantially similar to the claims asserted in the *Ramirez* matter.  On April 20, 2021, the District Court for the Northern District of California granted a motion to transfer the *Quezada* action to the United States District Court, Central District of California, which, on April 26, 2021, issued Notice of Receipt of Case Transfer, assigning the action Case No. 2:21-cv-03458-JVS-PLA.  The Parties subsequently stipulated to consolidate the *Ramirez* and *Quezada* matters.  On June 3, 2021, the Court issued an Order consolidating the *Ramirez* and *Quezada* matters (the "Action"). (Declaration of H. Scott Leviant ["Leviant Decl."], at ¶ 4.)

On June 16, 2021, Plaintiffs filed a Consolidated Class Action Complaint that incorporated the claims for relief asserted in both the *Ramirez* and *Quezada* matters, including a cause of action for Civil Penalties Under PAGA [Cal. Lab. Code § 2699, et seq.]. (Leviant Decl., at ¶ 5.)

## B.     <u>Pre-Mediation Data Production and Analysis</u>

The Parties have conducted significant investigation of the facts and law during the prosecution of this Litigation. (Leviant Decl., at ¶ 6.)  Such investigation has included informal written discovery; the pre-mediation exchange of information and voluminous data; and, numerous communications between the Parties. (*Id*.)  The Parties have further investigated the applicable law as applied to the alleged claims of Plaintiffs and potential defenses thereto, and the damages claimed by Plaintiffs. (*Id*.)

After reviewing documents regarding Defendant's wage and hour policies and practices and other information obtained during the informal exchange of discovery, Class Counsel were able to evaluate the probability of class certification, success on the merits, and the reasonably obtainable maximum monetary exposure for all claims. Class Counsel reviewed these records and prepared a damage analysis prior to mediation. Class Counsel also investigated the applicable law regarding the claims and defenses asserted in the litigation.  (Leviant Decl., at ¶ 7.)

**PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR FINAL APPROVAL OF CLASS ACTION AND PAGA ACTION SETTLEMENT AND CERTIFICATION OF SETTLEMENT CLASS**

## C.    <u>Settlement</u>

On May 11, 2022, the Parties participated in a day-long mediation before Tripper Ortman, a well-regarded mediator who has mediated many wage and hour class actions. (Leviant Decl., ¶ 8.)  At the mediation, the Parties discussed at length the burdens and risks of continuing with the litigation as well as the merits of the claims and defenses.  (*Id.*)  The Parties agreed to the basic terms of a proposed settlement and ultimately signed a long form settlement agreement (the Agreement). (*Id.*)

Plaintiffs and Class Counsel are aware of the burdens of proof necessary to establish liability for the claims asserted in the Action, both generally and in response to Defendant's defenses thereto.  (Leviant Decl., ¶ 9.)  Plaintiffs and Class Counsel have also taken into account Defendant's agreement to enter into a Settlement that confers substantial relief upon the Class.

Based on the foregoing, Plaintiffs and Class Counsel have determined that the Settlement set forth in this Agreement is a fair, adequate, and reasonable Settlement and is in the best interests of the Class. (Leviant Decl., ¶ 10.)  Solely for the purpose of settling this case, the Parties stipulate to class certification.  (*Id.*)  If this Settlement is not approved by the Court for any reason, Defendant reserves its rights to contest class certification. (*Id.*)  This Settlement, if approved by the Court, will result in the termination with prejudice of the litigation through the entry of the Judgment and the release of all Released Claims for all Class Members, including all within the class definition who have not elected to exclude themselves from the Class.  (*Id.*)

## V.    <u>CLASS DEFINITION</u>

The Class is defined as follows:

All non-exempt employees of Defendant who worked for Defendant in

California during the Class Period, (the "Class Period" is November 3,

2016 through October 3, 2022).  (Settlement, ¶¶ 3-4.)  Excluded from the

Settlement Class are: non-exempt employees who worked at

Amazon.com, Inc. ("Amazon") locations and non-exempt employees who

1    were unionized.  (Settlement, ¶ 4.)

2    (Leviant Decl., ¶ 34 and Exhibit 1.)

3    **VI.    <u>DISCUSSION</u>**

4

5

6

7    **VII.    <u>THE SETTLEMENT MERITS FINAL APPROVAL</u>**

8            The law favors settlement, particularly in class actions and other complex cases,

9    where substantial resources can be conserved by avoiding the time, cost, and the rigors of

10   formal litigation.  *Van Bronkhorst v. Safeco Corp.*, 529 F.2d 943, 950 (9th Cir. 1976).

11   These concerns apply in a case such as this, where allegedly wrongful practices potentially

12   affected numerous employees, in relatively small amounts.

13           Any settlement of class litigation must be reviewed and approved by the court.  This

14   is done in two steps: (1) an early (preliminary) review by the court, and (2) a final review

15   after notice has been distributed to the class for their comment or objections.  The *Manual*

16   *for Complex Litigation Second* states at § 30.44 (1985):

17           A two-step process is followed when considering class settlements … if

18           the proposed settlement appears to be the product of serious, informed,

19           non-collusive negotiations, has no obvious deficiencies, does not

20           improperly grant preferential treatment to class representatives or

21           segments of the class, and falls within the range of possible approval, then

22           the court should direct that notice be given to the class members of a

23           formal fairness hearing, at which evidence may be presented in support of

24           and in opposition to the settlement.

25   When parties reach a settlement agreement prior to class certification, "courts must peruse

26   the proposed compromise to ratify both the propriety of the certification and the fairness of

27   the settlement."  *Acosta v. Trans Union LLC*, 243 F.R.D. 377, 383 (C.D. Cal. 2007).

28           "The first step is a preliminary, pre-notification hearing to determine whether the

**PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR FINAL APPROVAL OF CLASS ACTION AND PAGA ACTION
SETTLEMENT AND CERTIFICATION OF SETTLEMENT CLASS**

proposed settlement is 'within the range of possible approval.' This hearing is not a fairness hearing; its purpose, rather is to ascertain whether there is any reason to notify the class members of the proposed settlement and to proceed with a fairness hearing." *Armstrong v. Board of School Directors of the City of Milwaukee*, 616 F.2d 305, 314 (6th Cir. 1980) [quoting Manual for Complex Litigation s 1.46, at 53-55 (West 1977)]. "[T]he district court must assess whether a class exists," *Staton v. Boeing Co.*, 327 F.3d 938, 952 (9th Cir. 2003), *i.e.*, whether the lawsuit qualifies as a class action under Rule 23. *See, e.g., Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1022 (9th Cir. 1998) (reviewing settlement to ensure compliance with requirements of Rule 23(a) and Rule 23(b)(3)).

At the second stage of the approval process, after class members have had an opportunity to object to the settlement, the court makes a final determination whether the settlement is "fair, reasonable and adequate" under Rule 23(e). *Armstrong*, 616 F.2d at 314; *see Staton*, 327 F.3d at 952; *see also* Rule 23(e)(C)(1), which provides that a court may finally approve a settlement of a class action if it finds after a hearing that the settlement is "fair, reasonable, and adequate" and Rule 23(e)(C)(4), which provides that any class member may object to a proposed settlement.

A.    **Plaintiffs' Claims Merit Class Action Treatment for Settlement Purposes**

In determining the propriety of class certification, a court may not delve into the underlying merits of the claims. The fundamental question "is not whether . . . plaintiffs have stated a cause of action or will prevail on the merits, but rather whether the requirements of Rule 23 are met." *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 178 (1974).

The Ninth Circuit has established that, when ruling on the propriety of class certification, a district court "is bound to take the substantive allegations of the complaint as true." *Blackie v. Barrack*, 524 F.2d 891, 901 n.17 (9th Cir. 1975). A court "may not require plaintiffs to make a preliminary proof of their claim; it requires only sufficient information to form a reasonable judgment." *Baldwin & Flynn v. Nat'l. Safety Associates*, 149 F.R.D. 598, 600 (N.D. Cal. 1993). Under these standards, this action meets the

requirements for certification under Rule 23(a) and Rule 23(b)(3).

### 1.     Numerosity

Under Rule 23(a)(1), a class action may be maintained where "the class is so numerous that joinder of all members is impracticable."  In determining whether joinder would be impracticable, a court may consider not only the sheer number of class members, *Riordan v. Smith Barney*, 113 F.R.D. 60, 62 (N.D. Ill. 1986) (numbers alone may be dispositive), but also "the nature of the action, the size of the individual claims, [and] the inconvenience of trying individual suits." *Wang v. Chinese Daily News*, 231 F.R.D. 602, 606 (C.D. Cal. 2005).  "A class action may proceed upon estimates as to the size of the proposed class." *Lewis v. Gross*, 663 F. Supp. 1164, 1169 (E.D.N.Y. 1986).  *See also, In re Computer Memories Sec. Litig.*, 111 F.R.D. 675, 679 (N.D. Cal. 1986) (class certified where plaintiffs did not establish exact size, but demonstrated that class would "obviously be sufficiently numerous").

In this action, the Class is composed of 1,574 individuals.  (Dkt. No. 40-1: Leviant Decl., ¶ 35; Mitzner Decl., ¶ 5.)  It is sufficiently numerous that the individual joinder of all members is impracticable.

### 2.     Commonality and Predominance of Common Issues

Rule 23(a)(2) requires that there be "questions of law or fact common to the class." This commonality requirement is "construed permissively." *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1019 (9th Cir. 1998).  A plaintiff need not demonstrate that all questions of fact and law are common.  "The existence of shared legal issues with divergent factual predicates is sufficient." *Id*.  Where a class is united by a common interest in determining whether a defendant's broad course of conduct is actionable, commonality is not defeated "by slight differences in class members' positions." *Blackie,* 524 F.2d at 901 n.17.

In this litigation, all Class Members have shared a common interest in determining: whether Defendant provided legally compliant meal periods and rest breaks to Class Members; whether Defendant paid employees for all time worked; whether Defendant violated the itemized wage statement provisions of Labor Code § 226 by not providing

accurate information as to wages; and whether Defendant's policies and practices violated California Business & Professions Code §§ 17200 *et seq*.

Given the permissive standard that courts in the Ninth Circuit employ when determining commonality, certification of the Class for settlement purposes is appropriate as Rule 23(a)(2) is satisfied.

Once it is established that common issues of law or fact exist, for Rule 23(b)(3) purposes, the Court next examines whether those common issues predominate. The predominance inquiry focuses on whether the class is "sufficiently cohesive to warrant adjudication by representation." *Culinary/Bartender Trust Fund v. Las Vegas Sands, Inc.*, 244 F.3d 1152, 1162 (9th Cir. 2001). Central to predominance is "the notion that the adjudication of common issues will help achieve judicial economy." *Zinser v. Accufix Research Institute, Inc*., 253 F.3d 1188, 1189 (9th Cir. 2001). When common questions represent a significant aspect of the case and they can be resolved for all members of the class in a single adjudication, there is clear justification for handling the dispute on a representative rather than on an individual basis." *Hanlon*, 150 F.3d at 1022. It is well settled that the need for determining differing amounts of damages suffered by different class members does not preclude class certification. *See*, *Blackie*, 524 F.2d at 905; *Wang*, 231 F.R.D. at 613.

There are common issues that may predominate over individual issues in this litigation. For example: (1) whether Defendant uniformly failed to provide Class Members with legally compliant meal periods and rest breaks; (2) whether Defendant required or permitted employees to work off the clock; (3) whether Defendant provided putative Class Members with itemized wage statements that were inaccurate in violation of Labor Code § 226; and (4) whether Defendant failed to pay all overtime wages due and payable to former employees within the times specified under the California Labor Code.

### 3. Typicality

Rule 23(a)(3) requires that the representative plaintiff have claims "typical of the claims . . . of the class." This factor is also construed permissively. *See Hanlon*, 150 F.3d

at 1019-20.  Representative claims are typical "if they are reasonably co-extensive with those of absent class members; they need not be identical." *Id*. at 1020.  In other words, named plaintiffs need not be "identically situated" with all other class members.  "It is enough if their situations share a common issue of law or fact and are sufficiently parallel to insure a vigorous and full presentation of all claims for relief." *Cal. Rural Legal Assistance, Inc. v. Legal Servs. Corp.*, 917 F.2d 1171, 1175 (9th Cir. 1990).

Typicality refers to the "nature of the claim . . . of the class representative, and not to the specific facts from which it arose." *Hanon v. Dataproducts Corp.*, 976 F.2d 497, 508 (9th Cir. 1992).  The typicality requirement is satisfied where "the named Plaintiffs raise the same Labor Code violations as other putative class members." *Id*.  Here, Plaintiffs are raising the same claims as the putative class members and has alleged no other individual claims in this matter.  (Dkt. No. 40-1: Leviant Decl., ¶ 36; Dkt. No. 36-4: Ramirez Decl., ¶¶ 5-11; Dkt. No. 36-4: Quezada Decl., ¶¶ 4-10.)

### 4. Adequate Representation

Rule 23(a)(4) requires that "the representative parties will fairly and adequately protect the interests of the class."  Adequate representation turns on whether a named plaintiff and his counsel "have any conflicts of interest with other class members," and whether a named plaintiff and his counsel will "prosecute the action vigorously on behalf of the class."  Adequacy may be established by the mere fact that counsel are experienced practitioners. *Hanlon*, 150 F.3d at 1020.

There are no conflicts of interest between Plaintiffs and Class Members, and Plaintiffs have both shown and expressed their willingness to represent Class Members. (Dkt. No. 36-4: Ramirez Decl., ¶¶ 5-11; Dkt. No. 36-4: Quezada Decl., ¶¶ 4-10.)  The similarity of the claims asserted and remedies sought by Class Members and Plaintiffs do not suggest any divergent interests held by Plaintiffs.  Defendant did not assert unique defenses against Plaintiffs that it could not assert against any other Class Member.  Also, there are no conflicts with Plaintiffs' counsel.

Plaintiffs' counsel has substantial class action experience and can adequately

represent the Class.  They have been appointed class counsel in many wage and hour class actions against major employers.  (Dkt. No. 40-1: Leviant Decl., ¶¶ 21-26; Dkt. No. 40-2: Melmed Decl., ¶¶ 7-11.)

### 5.    Superiority

In deciding whether to certify a class for settlement purposes, a court considers the following factors to determine whether a class action is superior: (a) class members' interests in individually controlling the prosecution or defense of separate actions; (b) the extent and nature of any litigation concerning the controversy already commenced by or against members of the class; and (c) the desirability or undesirability of concentrating the litigation of the claims in the particular forum.[3]  Some courts have found that the third Rule 23(b)(3) factor is "conceptually irrelevant in the context of a settlement."  See *Strube v. American Equity Inv. Life Ins. Co.*, 226 F.R.D. 688, 697 (M.D. Fla. 2005).  "With the settlement in hand, the desirability of concentrating the litigation in one forum is obvious." *Elkins v. Equitable Life Ins. Of Iowa*, 1998 WL 133747, at \*19 (M.D. Fla. 1998).

To determine whether the superiority requirements of Rule 23(b)(3) are satisfied, a court compares a class action with alternative methods for adjudicating the parties' claims. Lack of a viable alternative to a class action necessarily means that it satisfies the superiority requirement.  *See Valentino v. Carter-Wallace*, 97 F.3d 1227, 1235-36 (9th Cir. 1996) ("a class action is a superior method for managing litigation if no realistic alternative exists").  "[I]f a comparable evaluation of other procedures reveals no other realistic possibilities, [the] superiority portion of Rule 23(b)(3) has been satisfied." *Culinary/Bartender Trust Fund*, 244 F.3d at 1163.  In *Culinary/ Bartender Trust Fund*, the Ninth Circuit held that the "case involve[d] multiple claims for relatively small sums" and that the class action clearly served as the only method that would "'permit the plaintiffs to

---

[3] Rule 23(b)(3)(A)-(C). When a court reviews a class action settlement, it does *not* consider Rule 23(b)(3)(D), the fourth factor, regarding difficulties of managing a class action. *Amchem Products Inc. v. Woodward* (1997) 521 U.S. 591, 620 (in deciding whether to certify a class for settlement purposes, a district court "need not inquire whether the case, if tried, would present intractable management problems").

pool claims which would be uneconomical to litigate individually.'" *Id*. at 1163.

The class action is superior here as it is on the only method that will allow Class Members "to pool [their individual] claims which would be uneconomical to litigate individually." *Id.*

The factors articulated in Rule 23(b)(3)(A), (B) and (C) also favor class certification. It is difficult to believe that any Class Members have an interest in individually controlling the prosecution of separate actions, given the relatively small sums involved for any one Class Member. Any Class Member who wants to pursue a separate action can opt out of the Settlement.

Also, it is desirable to concentrate the issues in this forum. The Settlement allows all individuals to resolve similar claims against Defendant through a process that does not even require the submission of a claim form.

**B.    The Settlement Falls Squarely Within the Range of Reasonableness and Should Be Finally Approved**

No single criterion determines whether a class action settlement meets the requirements of Rule 23(e). The Ninth Circuit has directed district courts to consider a variety of factors without providing an "exhaustive list" or suggesting which factors are most important. *See, Staton*, 327 F.3d at 959. "The relative degree of importance to be attached to any particular factor will depend upon and be dictated by the nature of the claim(s) advanced, the type(s) of relief sought, and the unique facts and circumstances presented by each individual case." *Officers for Justice v. Civil Service Commission of City and County of San Francisco*, 688 F.2d 615, 625 (9th Cir. 1982).

Due to the impossibility of predicting any litigation result with certainty, a district court's evaluation of a settlement essentially amounts to "'an amalgam of delicate balancing, gross approximations and rough justice.'" *Id*. at 625. The ultimate touchstone, however, is whether "class counsel adequately pursued the interests of the class as a whole." *Staton*, 327 F.3d at 961.

As the Ninth Circuit explained in *Officers for Justice*, the district court's role in

evaluating a class action settlement is therefore tailored to meet that narrow objective. *Officers for Justice*, 688 F.2d at 625.  Review under Rule 23(e) "must be limited to the extent necessary to reach a reasoned judgment that the agreement is not the product of fraud or overreaching by, or collusion between, the negotiating parties." *Id*.  Accordingly, the Ninth Circuit will not reverse a district court's approval of a class action settlement "unless the fees and relief provisions clearly suggest the possibility that class interests gave way to self interest." *Staton*, 327 F.3d at 961.

There is a presumption that the negotiations were conducted in good faith. Newberg, §11.51; *Pridd v. Edelman*, 883 F.2d 438, 447 (6th Circuit 1989); *Mars Steel Corp. v. Continental Illinois National Bank and Trust Co.*, 834 F.2d 677, 682 (7th Cir. 1987).  Courts do not substitute their judgment for that of the proponents, particularly where, as here, settlement has been reached with the participation of experienced counsel familiar with the litigation. *Hammon v. Barry*, 752 F. Supp. 1087 (D.D.C. 1990); *In re Armored Car Anti-Trust Litigation*, 472 F. Supp. 1357 (N.D. GA 1979); *Sommers v. Abraham Lincoln Federal Savings & Loan Association*, 79 F.R.D. 571 (E.D. PA 1978). The fact that settlement results from arms-length negotiations following "relevant discovery" creates "a presumption that the agreement is fair." *Linney v. Cellular Alaska Partnership*, 1997 WL 450064, *5 (N.D. Cal. 1997); *See In re Immune Response Securities Litigation*, 497 F. Supp. 2d 1166, 1174 (S.D. Cal. 2007) (settlement approved where informal discovery gave the parties a clear view of the strength and weaknesses of their cases).

Here, the Parties reached a non-collusive settlement after discovery and extended negotiations.  The settlement was finally reached after a day of arm's length negotiations before Steve Rottman, a highly-respected mediator skilled at helping parties attempting to negotiate reasonable settlements in wage and hour class actions.  Obtaining class certification and establishing liability posed significant hurdles for the class that justified the settlement.  The Stipulation falls within the range of reasonable outcomes and merits approval under Rule 23(e). (Dkt. No. 40-1: Leviant Decl., ¶¶ 8-9, 11, 13-20; Dkt. No. 40-

2: Melmed Decl., ¶¶ 12-19.)

### 1.    The Value of the Settlement to Class Members Is Fair, Reasonable and Adequate

The Parties reached a Settlement in good faith after negotiating at arm's length with a professional mediator.  (Leviant Decl., ¶ 8.)  Settlement occurred only after discovery commenced and additional information was shared prior to mediation (including detailed time records for a sample of putative class members).  The information produced in discovery, and the additional data about class composition produced for mediation, were sufficient to permit Plaintiffs' counsel to adequately evaluate the settlement. And, notably, approval of a class action settlement does not require that discovery be exhaustive.  *See*, *e.g.*, *In re Immune Response Securities Litigation*, 497 F. Supp. 2d 1166, 1174 (S.D. Cal. 2007) (settlement approved where informal discovery gave the parties a clear view of the strength and weaknesses of their cases).  The fact that settlement results from arms length negotiations following "relevant discovery" creates "a presumption that the agreement is fair."  *Linney v. Cellular Alaska Partnership*, 1997 WL 450064, at *5 (N.D. Cal. 1997).

With respect to the claims asserted on behalf of the Settlement Class in this case, there are significant risks that support the reduced compromise amount. These risks include, but are not limited to: (i) the risk that Plaintiffs would be unable to establish liability for allegedly unpaid straight time or overtime wages, *see Duran v. US Bank Nat'l Ass'n*, 59 Cal. 4th 1, 39 & fn. 33 (2014) ("*Duran*"), *citing Dilts v. Penske Logistics, LLC* 2014 WL 205039 (S.D. Cal. 2014) (dismissing certified off-the-clock claims based on proof at trial); (ii) the risk that Defendant's challenged employment policies might not ultimately support class certification or a class-wide liability finding, *see*, *Duran*, 59 Cal. 4th at 14 & fn. 28 *(*citing Court of Appeal decisions favorable on class certification issue without expressing opinion as to ultimate viability of proposition); (iii) the risk that uncertainties pertaining to the ultimate legality of Defendant's policies and practices could preclude class-wide awards of statutory penalties under Labor Code §§ 203 and 226(e); (iv) the risk that individual differences between Settlement Class Members could be

1  construed as pertaining to liability, and not solely to damages, *see*, *Duran*, 59 Cal. 4th at

2  19; (v) the risk that any civil penalties award under the PAGA could be reduced

3  substantially by the Court in its discretion, see Labor Code § 2699(e)(1); (vi) the risk that

4  class treatment could be deemed improper as to one or more claims except for settlement

5  purposes; (vii) the risk that lengthy appellate litigation could ensue, (viii) <u>the substantial

6  risk that differences in the work experiences of employees assigned to different client

7  locations would make both certification and proof of liability prohibitively unlikely</u>.

8  Defendant strongly denies any liability and the propriety of class certification for any

9  reason other than settlement.  (Dkt. No. 40-1: Leviant Decl., ¶ 16.)  Continued litigation of

10  this lawsuit presented Plaintiffs and Defendant with substantial legal risks that were (and

11  continue to be) very difficult to assess.

12         In light of the uncertainties of protracted litigation, the settlement amount reflects a

13  fair and reasonable recovery for the Settlement Class Members.  (Dkt. No. 40-1: Leviant

14  Decl. ¶¶ 13-20; Dkt. No. 40-2: Melmed Decl., ¶ 15-18.)  The settlement amount is, of

15  course, a compromise figure.  (Dkt. No. 40-1: Leviant Decl. ¶ 17; Dkt. No. 40-2: Melmed

16  Decl., ¶ 19.)  By necessity it took into account risks related to liability, damages, and all

17  the defenses asserted by the Defendant.  (*Id*.)  Moreover, each Settlement Class Member

18  will be given the opportunity to opt out of the Settlement, allowing those who feel they

19  have claims that are greater than the benefits they can receive under this Settlement, to

20  pursue their own claims. (*Id*.)  For the approximately 1,574 members of the Class, the

21  average *gross* recovery before deductions for taxes, fees, and other costs, is approximately

22  **$1,588.31** per class member.  (*Id*.)  The value of this amount reflects a fair compromise

23  well within the range of reasonableness.  Given the strong case that Defendant could bring

24  to bear to challenge certification and liability, this is not an inconsequential sum.  And,

25  confirming the fundamental fairness of the settlement, <u>each Class Member</u> will be

26  compensated ratably based on the number of weeks they that they worked in a relevant

27  position during the class period (the Class members worked full time schedules, rendering

28  allocation by work week equitable). (*Id*.)

The Gross Settlement Amount of **$2,500,000.00** is about **75%** of the **$3,354,098.69** estimate of *risk-adjusted* recovery (excluding interest) at *this* stage in the litigation. While Plaintiffs would certainly have preferred to recover more (and Defendant would have preferred to pay less), this outcome is in line with a carefully constructed estimate of the current fair value of the case.  (Leviant Decl., ¶ 18.)  On that basis, it would be unwise to pass up this settlement opportunity.  The maximum damage values are estimates based on average wage rates, numbers of employees, and the amount of time covered by the class period.  (*Id.*)

After analyzing the claims in this matter, Plaintiffs have concluded that the value of this Settlement is fair, adequate and reasonable. (*Id.*)  The maximum calculated reasonable exposure, after removing the *most* implausible or extreme estimated recoveries, is **$25,883,398.45**, *including* PAGA penalties (which, nevertheless, includes a highly optimistic view of what could be proven in this matter).  (*Id.*)  The risk-adjusted value of each claim, on a claim-by-claim basis, is as follows:

- The estimated exposure for off the clock work over the class period was calculated to be **$2,947,585.25** (assuming 5 minutes of off-the-clock work each shift due to Covid screenings).  With risk factor discounts for certification (estimated at 0.25) and liability proof (estimated at 0.3), the current value of that claim is estimated by Plaintiffs' counsel to be only **$221,068.89**.

- The reasonably estimated exposure for rest break violations over the class period was calculated at **$4,882,273.40**, but with low chances of certification and proof of liability (20% and 20% respectively) for a risk-adjusted exposure of **$195,290.94** (based on an extreme estimate of one rest period violation for *every* Class Member in *100%* of their work weeks).

- The reasonably estimated exposure for meal break violations over the class period was calculated at **$2,304.454.80** before any risk reductions, but with low chances of certification and proof of liability (25% and 30%

respectively) for a risk-adjusted exposure of $172,834.11 (based on an estimate of one meal period violation for *every* Class Member in **50%** of their work weeks).

- The reasonably estimated exposure for unreimbursed expenses over the class period was calculated at **$729,387.50** before any risk reductions, but with low chances of certification and proof of liability (25% and 20% respectively) for a risk-adjusted exposure of $36,469.38 (based on an assumption of $12.50 in unreimbursed expenses every single month).

- Risk-adjusted penalty recoveries for wage statement and Labor Code § 203 penalties were estimated to be approximately **$44,100.00** and **$50,576.25**, respectively, on maximum exposures of **$882,000.00** and **$1,011.535.00**, respectively (not only are the Section 203 and 226 penalties entirely dependent on the success of the off-the-clock claim, they both must also overcome the defense that Defendant did not intend any underpayment; additionally, the 226 penalty has a one-year statute).

- Performing risk-adjusted valuations for all claims yields a total value in the range of only **$762,970.69**, excluding PAGA.[4] (*Id.*) PAGA penalties were calculated as having a maximum realistic exposure of **$12,955,640.00**, but a risk adjusted value of **$2,591.128.00**, after factoring in risks of reduction in penalties pursuant to Court discretion and the high risk of the inability to prove violations for all aggrieved employees. (Leviant Decl., ¶ 18.)

This result here is fully supportable as reasonable. First, rest break and meal period

---

[4] It is challenging to assign specific percentages to future events, but it does provide a specific method for attempting to reduce the concept of "very high risk" or "high risk" to a quantifiable amount. Certification of a claim is typically a binary event. One does not obtain a 20% certification; a claim is either certified or it is not. But the current expected value is best quantified by applying a risk reduction, based on the total experience of counsel.

1    claims have been challenging to certify for many years, even after *Brinker*.[5] (Leviant

2    Decl., ¶ 19.) Second, off-the-clock claims have proven to be extremely difficult to certify

3    by their very nature. In this case, the difficulty of certifying and proving off-the-clock and

4    meal period claims is compounded by the practice of having employees enter their own

5    times manually in a timekeeping system which they confirm as accurate each week.

6    Third, certification rates are lower than conventional wisdom holds. *See*, *e.g.*, H. Scott

7    Leviant, *Second Interim Report on class actions in California sheds new light on*

8    *certification* (February 19, 2010), www.thecomplexlitigator.com, available at

9    http://www.thecomplexlitigator.com/post-data/2010/2/19/second-interim-report-on-class-

10    actions-in-california-sheds-n.html; *see also*, *Findings of the Study of California Class*

11    *Action Litigation*, 2000-2006, available at

12    http://www.courtinfo.ca.gov/reference/documents/class-action-lit-study.pdf (finding, as

13    part of a study conducted by the Judicial Council of California, at page 5, and in Table 9,

14    at page 15, that only 21.4% of all class actions were certified either as part of a settlement

15    *or* as part of a contested certification motion). In estimating risk adjustments here,

16    Plaintiffs' counsel has assumed certification probabilities, depending on the claim, that

17    equal or substantially *exceed* the average rate at which cases were certified in California

18    over the study years, based upon data available through the California Courts website.

19    (*Id.*) And those certification risk estimates are likely high, given the factual challenges

20    present in this case in particular (for example, the myriad of work locations for class

21    members). Given that well under 20% of all cases filed in California as proposed class

22    actions are ultimately certified by way of a contested motion, and a similar trend is seen in

23    federal courts, it is fair to say that, if anything, the use of high estimates for certification

24    *overstates* the realistic current claim value. (*Id.*) It would also be appropriate to evaluate

25

26

---

27      [5] Furthermore, here, Defendant's meal and rest period policies are facially lawful after
2018, Defendant has a method to pay premiums, and there is a record of premium

28    payments made, including to Plaintiff. (Dkt. No. 40-1: Leviant Decl., ¶ 18.)

the result by examining only the premium wages at issue, excluding penalties and interest.[6] Under that metric, the settlement recovered an amount approximately equal to 25% of the realistic unreduced claim value for the premium wages at issue (wages, and meal and rest period premiums). Viewed either way, this Settlement achieves the goals of the litigation.

By obtaining reasonable value for their claims in light of the substantial risks of litigation, Plaintiffs clearly achieved a fair settlement that merits approval, particularly in light of the risks posed by further litigation.

### 2. The Agreed Upon Fees and Costs Are Reasonable

#### a) Plaintiffs seek reasonable fees.

While a separate Motion (Dkt. No. 40) addresses Plaintiffs' requests for attorney's fees, costs, and enhancement awards, Plaintiffs briefly address the reasonableness below.

The compensation sought for Plaintiffs' counsel is also fair and reasonable. The Ninth Circuit has directed that, to determine what constitutes a fair and reasonable percentage of the settlement for purposes of calculating common fund attorneys' fees, the courts should begin with a "benchmark" percentage of the total fund. *Paul, Johnson, Alston & Hunt v. Graulty*, 886 F.2d 268, 272 (9th Cir. 1989); *Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1047 (9th Cir. 2002); *Six Mexican Workers v. Arizona Citrus Growers*, 904 F.2d 1301, 1311 (9th Cir. 1990). The percentage can be adjusted upwards where the risks overcome, the benefits obtained and the work necessary to achieve those results supports such an adjustment of the benchmark.

Here, the Settlement Amount is $2,500,000.00. Plaintiffs' counsel has agreed to seek no more than **$833,333.33** in fees, which is appropriate in light of the quality of the

---

[6] The exclusion of interest and penalties from the fairness evaluation is proper because, first, PAGA penalties are discretionary (*see* Lab. Code § 2699(e)(2) (the court in its discretion "may award a lesser amount than the maximum civil penalty amount specified by this part…")), and, second, courts evaluate the strength of a proposed settlement without taking potential penalties or interest into consideration. *See Rodriguez v. West Publishing Corp.*, 563 F.3d 948, 955 (9th Cir. 2000); *see also Miller v. CEVA Logistics U.S.A., Inc.*, 2015 WL 729638, at *7 (E.D. Cal. Feb. 19, 2015) (court utilized calculation of a defendant's exposure exclusive of interest and penalties to determine whether the settlement fell within the range of possible approval).

Case No.:  2:20-CV-11319-JVS-PVC                Page 22                *Ramirez v. C&W Facility Services, Inc.*

**PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR FINAL APPROVAL OF CLASS ACTION AND PAGA ACTION SETTLEMENT AND CERTIFICATION OF SETTLEMENT CLASS**

result and the benchmark standard.  (Dkt. No. 40-1: Leviant Decl., ¶ 31.)

      *b)  Plaintiffs seek only actual costs.*

   Plaintiffs' counsel also requests actual costs incurred and paid without reimbursement in the litigation of this Action, not to exceed $30,000.  The actual costs requested are **$9,523.56**, for Moon & Yang, and **$6,800.62**, for Melmed Law Group, for a combined total of **$16,324.18**, which is well below the cap.

     **3.  The Service Payments Are Reasonable**

   Service payment awards serve to reward a named plaintiff for the time and effort expended on behalf of the class, and for exposing herself to the significant risks of litigation. "Courts routinely approve incentive awards to compensate named plaintiffs for the services they provided and the risks they incurred during the course of the class action litigation." *Ingram v. The Coca-Cola Co.*, 200 F.R.D. 685, 694 (N.D. Ga. 2001); *In re Southern Ohio Correctional Facility*, 175 F.R.D. 270, 272 (S.D. Ohio 1997).  In *Coca-Cola*, for example, the court approved incentive awards of $300,000 to each named plaintiff in recognition of the services they provided to the class by responding to discovery, participating in the mediation process and taking the risk of stepping forward on behalf of the class.  *Coca-Cola*, 200 F.R.D. at 694; *see also Van Vranken v. Atl. Richfield Co.*, 901 F. Supp. 294, 300 (N.D. Cal. 1995) (approving $50,000 participation award).

   Here, Plaintiffs' counsel requests that the Court grant Plaintiffs service awards of $7,500 each.  The amount of the service awards is reasonable given the risks undertaken by Plaintiffs.  Taking the risk of filing a lawsuit against an employer deserves reward.  Additionally, Plaintiffs were actively involved in the litigation and settlement negotiations of this Action.  And Plaintiffs worked diligently with counsel to prepare the action and conferred with counsel regarding settlement negotiations.  (Dkt. No. 36-4: Ramirez Decl., ¶¶ 5-19; Dkt. No. 36-5: Quezada Decl., ¶¶ 4-18; Dkt. No. 40-1: Leviant Decl., ¶ 32; Dkt. No. 40-2: Melmed Decl., ¶¶ 20-21.) The requested amount is reasonable.  Plaintiffs will also provide a general release as a condition of the enhancement, which further supports reasonableness.

### 4.    The Costs of Administration Are Reasonable

Phoenix Settlement Administrators, an experienced third-party administrator, was appointed to administer the notice and settlement distributions in this matter.  (Mitzner Decl., ¶ 2.)  Performing in all respects as required by the Agreement to date, the final cost of administration, including future work, is $16,000.00. (Mitzner Decl., ¶ 16.) Administration of this Settlement for 1,574 Class Members occurred without any issues to date.  (Dkt. No. 40-1: Leviant Decl., ¶ 33.)  Phoenix will continue to perform services for the Settlement Class Members when it completes the calculation and distribution of payments made under the Settlement.

## VIII.  <u>CONCLUSION</u>

Plaintiffs negotiated a settlement that resolves claims and recovers money for 1,574 Settlement Class Members.  This settlement is fair and reasonable, especially given the claims and the potential defenses to them and to class certification.  Plaintiffs ask the Court to grant final approval of the settlement, grant the motion for an award of fees and costs set for hearing concurrently, and adopt the proposed order submitted herewith that resolves both motions.

Respectfully submitted,

Dated:  May 5, 2023            **MOON & YANG, APC**

By: _____
Kane Moon
H. Scott Leviant
Mariam Ghazaryan

Attorneys for Plaintiff RUTH RAMIREZ

**MELMED LAW GROUP P.C.**
Johnathan Melmed

Attorneys for Plaintiff JORGE RUIZ QUEZADA